UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
DART MECHANICAL CORPORATION,

                    Plaintiff,

                                        <u>MEMORANDUM & ORDER</u>
            -against-                   13-CV-2941(JS)(AYS)

JOHNSON CONTROLS, INC.,

                    Defendant.
----------------------------------X
APPEARANCES
For Plaintiff:      Marvin Schechter, Esq.
                    Michael D. Ganz, Esq.
                    Turnstead & Schecter
                    500 North Broadway, Suite 101
                    Jericho, NY 11753

For Defendant:      James Barriere, Esq.
                    Nathan Sabourin, Esq.
                    Hinckley Allen & Snyder LLP
                    30 South Pearl Street
                    Albany, NY 12207

SEYBERT, District Judge:

        This case arises out of a subcontract between Plaintiff

Dart Mechanical Corporation ("Dart") and Defendant Johnson

Controls, Inc. ("Johnson"), in which Johnson agreed to furnish and

install an automatic temperature control system ("ATCS") as part

of a larger construction project (the "Subcontract").[1]   Dart

commenced this action arguing that Johnson failed to complete the

---

[1] The Subcontract can be found at Barriere Aff. Ex. D., Docket
Entry 26-7, at 15-22.  For the purposes of this Memorandum and
Order, the Court will use the page numbers generated by the
Electronic Case Filing System when referring to the parties'
exhibits.

ATCS work.  The parties have both moved for summary judgment.

(Docket Entries 25, 26.)  As discussed below, Johnson's motion for

summary judgment is DENIED, and Dart's motion for partial summary

judgment is GRANTED IN PART and DENIED IN PART.

BACKGROUND[2]

I.   Factual Background[3]

A.   The Project

On April 23, 2003, Dart contracted with the City of New

York (the "City"), acting by and through the City's Department of

Sanitation ("DSNY" or the "Owner"), to install a bus garage in New

York City (the "Prime Contract" or the "Project").  (Def.'s 56.1

---

[2] The following facts are drawn from the parties' 56.1
statements, their affidavits, and any other supporting
documents.

[3] Before providing a factual background, the Court must address
Johnson's argument that Dart failed to comply with the Local
Civil Rules and this Court's Individual Motion Practices.
Johnson argues that Dart failed to provide, among other things,
a notice of motion in support of its summary judgment motion.
(See Def.'s Opp. Br., Docket Entry 30, at 17-18.)  As a result,
Johnson requests that the Court deny Dart's motion for non-
compliance.  But "[a] district court has broad discretion to
determine whether to overlook a party's failure to comply with
local court rules."  Holtz v. Rockefeller & Co., Inc., 258 F.3d
62, 73 (2d Cir. 2001); Somlyo v. J. Lu-Rob Enters., Inc., 932
F.2d 1043, 1048 (2d Cir. 1991) (noting that a district court has
"the inherent power to decide when a departure from its Local
Rules should be excused or overlooked") (citation omitted).
Thus, since the parties were "fairly and adequately apprised of
the nature and basis of the application," the Court will
consider Dart's summary judgment motion.  See Sentry Ins. A Mut.
Co. v. Brand Mgmt., Inc., No. 10-CV-0347, 2013 WL 5725987, at *2
(E.D.N.Y. Oct. 21, 2013).

Stmt., Docket Entry 26-2, ¶ 4.)  Nearly two years later, Dart and York International Corporation ("York") entered into the Subcontract, in which York would install an ATCS in exchange for $1,425,000.  (Def.'s 56.1 Stmt. ¶ 5.)  After York began work, Johnson acquired York, assuming the ATCS work under the Subcontract.  (Def.'s 56.1 Stmt. ¶¶ 6-7.)  The ATCS work included, among other items, the installation of thermostats, air handling units ("AHU"), heat and ventilation ("H&V") units, and smoke control systems.  (See Settlement Agreement.)  According to Dart, Johnson was also required to install a carbon monoxide, nitrous oxide gas monitoring ("CO/NO2") system.  (See, e.g., Compl., Docket Entry 1-1. ¶ 12.)

To date, the Project has not been finished.  (Def.'s 56.1 Stmt. ¶ 8.)  Dart alleges that DSNY is completing the ATCS work and backcharging Dart for all costs.  (Pl.'s 56.1 Stmt.,[4] ¶¶ 6, 9.)  Dart further alleges that the City owes Dart an additional $4,005,622.44 for approved extra and additional work. (See Karol Aff. in Opp. Ex. 5,[5] ¶ 35, at 24.)

On October 16, 2012, Dart, along with other prime contractors, filed suit against the City seeking unpaid

---

[4] Plaintiff's 56.1 Statement can be found at Docket Entry 24, at 13-15.

[5] Exhibit 5 to the Karol Affidavit in Opposition can be found at Docket Entry 28-3, at 14-35.

compensation for the Project.  (See Karol Aff. in Opp. Ex. 5.)
The City answered and counterclaimed against Dart and the other
prime contractors.  (See Karol Aff. in Opp. Ex. 6.[6])  The City
argues, among other things, that Dart "delay[ed] completion of its
work and the work of other contractors on the Project."  (Karol
Aff. in Opp. Ex. 6, ¶ 174.)  As a result, the City is seeking both
liquidated and compensatory damages in an unspecified amount.
(Karol Aff. in Opp. Ex. 6, ¶ 177.)  The City notes that the Prime
Contract provides an assessment of liquidated damages.  (Karol
Aff. in Opp. Ex. 6, ¶ 175.)

   B.   The Subcontract

        The Subcontract contains two articles relevant to this
Order.  Article 17 of the Subcontract sets out the procedure to
make a claim for extra or additional work.  As discussed below,
the parties agreed that Dart must approve any claims for extra or
additional work in a written change order:

> 17.1 The SUBCONTRACTOR shall make no claim for
> extra or additional work **unless performed**
> **pursuant to a written change order executed by**
> **an officer of DART and by SUBCONTRACTOR.**
>
> 17.2 To avoid disputes about whether or not
> changes were directed to be made, it is agreed
> that all such directions, to be valid, must be
> supported by a written work order form with a
> specific number, signed by an officer of DART
> prior to SUBCONTRACTOR'S performance of such
> extra work.  It is specifically understood

---

[6] Exhibit 6 to the Karol Affidavit in Opposition can be found at
Docket Entry 28-3, at 36-77.

that the fact that a written work directive
has been issued does not, in and of itself,
establish that the work covered thereby is in
fact a change to the Subcontract but that,
nevertheless, the existence of such a
directive is a strict condition precedent to
the subsequent issuance of a formal change
order in an otherwise proper case. A Change
Order to the Subcontract must be in writing
and signed only by an officer of DART. All
changes in the WORK that may be made by the
SUBCONTRACTOR without such written direction
from DART shall have been made solely at the
SUBCONTRACTOR'S risk, and where such changes
involve additional cost, the SUBCONTRACTOR
hereby waives all claims for additional
compensation therefore.

(Subcontract at 7) (emphasis added).

Article 18 details the Subcontract's notice of claim

requirements. As set forth below, Johnson was required to issue

a notice of claim to Dart within seven days after the claim arises:

18.3 If the SUBCONTRACTOR claims any WORK or
disputed work required by DART involves extra
or additional work not required by this
subcontract, the SUBCONTRACTOR within seven
(7) days of receipt of a written order from
DART directing the performance of such WORK or
disputed work shall make a claim in writing to
DART stating that the WORK is being performed
under protest, the basis of the claim and a
detailed breakdown of the cost of labor,
material, equipment and other changes. **The
SUBCONTRACTOR'S failure to submit written
notice of claim and protest for extra or
disputed work within the time and manner
specified shall constitute a waiver of same
and no recovery can be had by the
SUBCONTRACTOR for any cost or damages for such
extra or disputed work.**

(Subcontract 8) (emphasis added).

II.  Procedural History

Dart commenced this action against Johnson in Nassau County Supreme Court on April 23, 2013.[7]  According to the Complaint, Dart is seeking $14.7 million in damages based on four claims: (1) breach of contract in an amount no less than $1 million (Compl. ¶¶ 6-20); (2) delays and impacts to Dart's Prime Contract in an amount no less than $2 million (Compl. ¶¶ 21-23); (3) Dart's exposure to liquidated damages in an amount no less than $2.5 million (Compl. ¶¶ 24-28); and (4) Dart's exposure to additional damages in an amount no less than $9.2 million (Compl. ¶¶ 29-31). In sum, Dart argues that Johnson failed to complete certain change order work and failed to properly supervise and coordinate its work on the Project.  (See Compl. ¶¶ 6-31.)  Johnson has denied Dart's allegations and asserted three counterclaims: (1) breach of contract, (2) unjust enrichment, and (3) trust fund diversion under Article 3-A of the New York Lien Law.  (See Am. Answer & Countercls., Docket Entry 4.)

During discovery, Johnson requested that Dart itemize and explain its alleged $14.7 million damages claim.  (See Def.'s 56.1 Stmt. ¶ 13.)  In response, Dart submitted the following:

> 1. Dart "will be backcharged by the Owner [i.e., the City and DSNY] . . . . ;"

---

[7] On May 17, 2013, Johnson removed the action to this Court. (Docket Entry 1.)

2. Dart's damages "will be fully ascertain[able] at the end of the Project;"

3. Dart's "exposure to Liquidated Damage[s] will be fully ascertain[able] at the end of the Project;" and

4. Dart "and its other subcontractors have exposure to additional costs and damages which will be fully ascertainable at the end of the Project."

(Def.'s 56.1 Stmt. ¶ 14.)   Unsatisfied, Johnson challenged the sufficiency of these responses, so Dart issued a supplemental discovery response:

> "The cost to remedy and complete Johnson's work **cannot be ascertained** because the Owner is to correct and complete Johnson's work. Dart will supplement its response **when the Owner determines this cost** for which it will backcharge Dart.  The cost to Dart due to Johnson's delay **cannot be ascertained** because the [P]roject is not closed.  However, the Prime Contract provides for liquidated damages at $2,000.00 per calendar day."

(Def.'s 56.1 Stmt. ¶¶ 16–18 (emphasis in original).)   Discovery has now ended.

Pending before the Court are the parties' cross-motions for summary judgment.  (Docket Entries 25, 26.)  Dart moves for partial summary judgment on four grounds: (1) breach of contract for extra work, (2) unjust enrichment, (3) trust fund diversion, and (4) a claim for backcharges.  (See Pl.'s Br., Docket Entry 25-2, at 2, 7, 10, 11.)

Johnson moves for summary judgment arguing that Dart has failed to prove that it suffered any damages, much less $14.7 million.  (Def.'s Br., Docket Entry 26-1, at 10.)  Essentially,

Johnson is seeking to dismiss the Complaint or, alternatively, to limit Dart's award to nominal damages. In addition to its summary judgment motion, Johnson previously suggested that it would seek sanctions under Federal Rule of Civil Procedure 11. See FED. R. CIV. P. 11. In its reply papers, however, Johnson states that it withdraws any requests for sanctions.[8] (Def.'s Reply Br., Docket Entry 32, at 7.)

## DISCUSSION

The Court will first address the applicable legal standard on a motion for summary judgment before turning to the parties' arguments.

## I. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

---

[8] By letter to the Court dated July 16, 2014, Johnson indicated that it would seek Rule 11 sanctions against Dart. (Docket Entry 17 at 3.) ("In addition to its motion for summary judgment, [Johnson] will also seek F.R.C.P. Rule 11 sanctions against [Dart] based on the inflated monetary demand in [Dart's] Complaint.") Although Johnson never filed a formal motion, Dart argues that "[t]he imposition of Rule 11 sanctions is discretionary and should be reserved for extreme cases . . . ." (Pl.'s Opp. Br., Docket Entry 28-2, at 8 (internal quotation marks and citation omitted).) In its reply papers, however, Johnson withdraws its request for sanctions and reserves to file a motion at a later date. (Def.'s Reply Br. at 7.) Thus, the Court will not consider this issue.

247-48, 106 S. Ct. 2505, 2509-10, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).  A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256).  "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment.  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41

("[U]nsupported allegations do not create a material issue of fact.").

"The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)). Thus, even if both parties move for summary judgment and assert the absence of any genuine issues of material fact, "a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citation omitted). "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales, 249 F.3d at 121 (citation omitted).

## II. Johnson's Motion for Summary Judgment

### A. Breach of Contract Claim

Johnson moves for summary judgment arguing that Dart has failed to provide evidence in support of its $14.7 million damages claim. (Def.'s Br. at 10.) Dart, however, has stated that "[t]he cost to remedy and complete Johnson's work cannot be ascertained because [DSNY] is to correct and complete Johnson's work." Dart further states that the damages due to Johnson's purported delay "cannot be ascertained because the [P]roject is not closed.

However, the Prime Contract provides for liquidated damages at $2,000.00 per calendar day." (Def.'s 56.1 Stmt. ¶¶ 16–18 (emphasis and alteration in original).)

"Under New York law, 'an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'" First Inv'rs Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998) (quoting Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994)). Here, the first element is undisputed, but the parties dispute the second and third elements, arguing that the other breached the Subcontract. Johnson's motion, however, focuses on the fourth element of damages. At the summary judgment stage, "'[t]he failure to prove damages is . . . fatal to [a] plaintiff's breach of contract cause of action.'" Shred-It USA, Inc. v. Bartscher, No. 02-CV-4082, 2005 WL 2367613, at *8 (E.D.N.Y. Sept. 27, 2005) (alterations and ellipsis in original) (quoting Cramer v. Spada, 203 A.D.2d 739, 741, 610 N.Y.S.2d 662, 664 (3d Dep't 1994)).

As the Second Circuit has made clear, "New York courts do not require scientific rigor in the calculation of damages." Lexington Prods. Ltd. v. B. D. Commc'ns, Inc., 677 F.2d 251, 253 (2d Cir. 1982); see also W. L. Hailey & Co. v. Niagra County, 388 F.2d 746, 753 (2d Cir. 1967) (collecting cases). Of course, "[s]peculation or conjecture" is not enough. Wolff & Munier, Inc.

v. Whiting-Turner Contracting Co., 946 F.2d 1003, 1010 (2d Cir. 1991) (internal quotation marks and citation omitted).  Damages must be "reasonably certain."  Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 110 (2d Cir. 2007) (quoting Wakeman v. Wheeler & Wilson Mfg. Co., 101 N.Y. 205, 4 N.E. 264, 266 (1886)) (emphasis in original).  But the "certainty" principle "refers to the fact of damage, not the amount."  Id. (emphasis in original).  Thus, if a plaintiff can "demonstrate a genuine issue of fact as to the existence of actual damages resulting from the breach of contract, then summary judgment . . . is inappropriate even if the precise amount or extent of the damages is still somewhat uncertain."  V.S. Int'l, S.A. v. Boyden World Corp., No. 90-CV-4091, 1993 WL 59399, at *7 (S.D.N.Y. Mar. 4, 1993).

According to the Complaint, Dart is seeking $14.7 million in damages based on four claims: (1) breach of contract in an amount no less than $1 million (Compl. ¶¶ 6-20); (2) delays and impacts to Dart's Prime Contract in an amount no less than $2 million (Compl. ¶¶ 21-23); (3) Dart's exposure to liquidated damages in an amount no less than $2.5 million (Compl. ¶¶ 24-28); and (4) Dart's exposure to additional damages in an amount no less than $9.2 million (Compl. ¶¶ 29-31).  Throughout discovery, Johnson has demanded a detailed breakdown on how Dart arrived at these calculations.  (Def.'s Br. at 11-13.)  Johnson's First Request for Interrogatories specifically demanded that Dart provide:

> a. An itemization of the total incurred
> by Plaintiff to complete its work under the
> Prime Contract;
> b. Details regarding payments made to
> and by Plaintiff in connection with the Prime
> Contract;
> c. Details regarding each and every
> basis for claims asserted against Defendant;
> d. Details regarding the work
> Plaintiff alleged that Defendant failed to
> perform and the damages incurred as a result;
> and,
> e. Details regarding how Plaintiff
> calculated its alleged $17.7 million in
> damages.

(Barriere Aff., Docket Entry 26-3, ¶ 16.) The Court will address all four damages categories below.

First, as to actual damages, Johnson argues that Dart's damages are "based upon future events that had not yet occurred." (Def.'s Br. at 11.) In response, Dart contends that DSNY backcharged Dart for $321,483 to complete the ATCS work on the Project, including the $CO/NO_2$ system. (Pl.'s Opp. Br., at 3; Karol Aff., Docket Entry 25-1, ¶¶ 5-13.) In support of this argument, Dart submitted the affidavit of Dart's President, Douglas Karol. According to Mr. Karol, DSNY admonished Dart for failing to complete the $CO/NO_2$ system, among other ATCS-related work. Karol attests, under penalty of perjury, that "[t]his work was Johnson's responsibility." (Karol Aff. in Opp., Docket Entry 28-1, ¶¶ 8-11.)

Second, Johnson asserts that Dart submitted no evidence showing that Johnson's alleged delays impacted Dart's claim

against the City and DSNY. (Def.'s Br. at 12.) Dart responds that DSNY advised Dart in various letters that "the majority of [the ATCS work] . . . remains to be completed," thus delaying the Project. (Karol Aff. in Opp. ¶ 8.) As a result of Johnson's alleged failure, the City has sued Dart for liquidated damages at $2,000 per day under the Prime Contract. Since June 2014, liquidated damages have accrued, totaling $4,810,000. (Pl.'s Opp. Br. at 3; Karol Aff. in Opp., ¶ 5.)

Third, as to the liquidated damages claim, Johnson points to Andrews International v. New York City Housing Authority to bolster its assertions. No. 08-CV-1580, 2008 WL 4974806, at *6 (S.D.N.Y. Nov. 24, 2008). In that case, the United States District Court for the Southern District of New York granted summary judgment for Andrews International ("Andrews") because the New York City Housing Authority's ("NYCHA") liquidated damages calculation was "speculative" and "mere guesswork." Id. According to the court, NYCHA had failed to provide evidence or documentation showing that Andrews failed to fulfill its responsibilities and merited liquidated damages. Id. But Dart, unlike NYCHA, raised a genuine issue of material fact by providing sworn testimony that Johnson failed to complete its responsibilities--namely, the ATCS work. As stated above, liquidated damages continue to accrue. (Pl.'s Opp. Br. at 3; Karol Aff., ¶ 5.)

And finally, Johnson contends that Dart has failed to provide any evidence or documents detailing the additional damages that Dart may incur. (Def.'s Br. at 13.) Dart argues in opposition that "Johnson's breaches of contract will impact Dart's delay claim and its subcontractor's delay claim against DSNY which total $9,635,794.00." (Pl.'s Opp. Br. at 6.) Although Dart insists that its "claim book" provides further support, (See generally Karol Aff. in Opp. Ex. 7, Docket Entry 28-4.), Johnson states that the "claim book" "expressly attributes several Project-related difficulties and delays to various parties but never to [Johnson]." (Def.'s Reply Br. at 5.)

Having examined the record, the Court finds that Dart has submitted sufficient evidence on the damages issue.[9] Even though Johnson demands more specificity, Dart has demonstrated that it suffered damages, assuming Johnson breached the Subcontract. So even if some of the damages "cannot be

_____

[9] The Court notes that even if Dart failed to raise genuine issues on its $14.7 million claim of actual damages, it could still proceed to trial to recover nominal damages, assuming that Johnson breached the Subcontract. See Contemporary Mission, Inc. v. Famous Music Corp., 557 F.2d 918, 926 (2d Cir. 1977); Hirsch Elec. Co. v. Cmty. Servs., Inc., 145 A.D.2d 603, 605, 536 N.Y.S.2d 141, 143 (2d Dep't 1988) ("It is a well-settled tenet of contract law that even if the breach of contract caused no loss or if the amount of loss cannot be proven with sufficient certainty, the injured party is still entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any.") (citation omitted). However, because Dart raised a genuine issue of material fact on actual damages, this issue is moot.

ascertained," that does not warrant dismissal of the claim. (Def.'s 56.1 Stmt. ¶¶ 16–18.) As the Second Circuit emphasized in Tractebel, if a plaintiff can prove the existence of damages, the plaintiff is entitled to some leeway in proving the precise amount of damages at trial. See 487 F.3d at 110-11.

And the Court acknowledges that Dart may not prevail on its entire claim at trial. In fact, Johnson points out that Dart's $14.7 million damages claim dwarfs the value of the $1.4 million Subcontract. (Def.'s Reply Br. at 6.) But the role of the Court is not "'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006) (quoting Anderson, 477 U.S. at 249, 106 S. Ct. at 2511). And because Dart has "demonstrate[d] a genuine issue of fact as to the existence of actual damages," this issue must be left for the factfinder. V.S. Int'l, 1993 WL 59399 at *6. Thus, Johnson's motion for summary judgment is DENIED.

III. Dart's Motion for Summary Judgment

A. Breach of Contract Counterclaim for Extra Work

Dart first moves for partial summary judgment seeking to dismiss Johnson's counterclaim for extra work on the Project. Dart's position is that "the work was not over and above the Subcontract, but rather the exact work specified in the Subcontract." (Pl.'s Br., at 2.) Alternatively, Dart asserts

16

that Johnson did not receive DSNY's approval and that Johnson failed to comply with the Subcontract's express terms and conditions. (Pl.'s Br. at 4-7.) In response, Johnson contends that the parties repeatedly engaged in a course of dealing that was inconsistent with the Subcontract. (Def.'s Opp. Br., at 2.)

Dart's first argument--that the extra work was required under the Subcontract--is easily disregarded. Dart makes this conclusory statement without citing any evidence or the specific sections of the Subcontract. Instead, Dart's argument indicates that there is a genuine issue of material fact about the scope of the Subcontract and any additional work Johnson completed. (Def.'s Opp. Br. at 5.)

The next reason offered by Dart--that the absence of Owner approval shows that Johnson is not entitled to any additional compensation--is likewise without merit. To be sure, various portions of the Subcontract state that Johnson will not receive any compensation for work not accepted by the Owner. (Pl.'s Br. at 7.) But a party "'cannot rely on [a] condition precedent . . . where the non-performance of the condition was caused or consented to by itself.'" Arc Elec. Constr. Co. v. Fuller Co., 24 N.Y.2d 99, 104, 247 N.E.2d 111, 113, 299 N.Y.S.2d 129 (1969) (citing O'Neil Supply Co. v. Petroleum Heat & Power Co., 280 N.Y. 50, 56, 19 N.E.2d 676, 679 (1939)). And "it is well established that, where work has, in fact, been substantially performed in

accordance with the provisions of a contract, the withholding of approval does not bar recovery." Id. at 104. Johnson alleges that Dart ceased work on the Project and alienated itself from the Owner, thus preventing further Owner approvals. (See Def.'s Opp. Br. at 12-13; Barriere Aff. ¶¶ 9-10; Barriere Aff. Ex. E,[10] 16:11-17:2.) As a result, there is an issue of fact whether Dart has waived the condition precedent of Owner approval.

But Dart also argues that even if the extra work went over and above the Subcontract, Johnson failed to follow the procedure for extra claims set forth in Articles 17 and 18 of the Subcontract. (Pl.'s Br. at 4, 6.) Under the Subcontract, Johnson is not entitled to a price increase for extra work unless Dart approves the increase in writing. And if Johnson disputes the extra or additional work, Johnson is required to submit a written statement within seven days "stating that the WORK is being performed under protest, the basis of the claim and a detailed breakdown of the cost of labor, material, equipment and other changes." (Subcontract ¶ 18.3, at 8.) The Court, however, is persuaded by Johnson's assertion that the parties repeatedly engaged in a course of dealing that was inconsistent with the terms of the Subcontract.

---

[10] Barriere Affidavit Exhibit E is the deposition transcript of Mr. Karol and can be found at Docket Entry 26-8.

A "'course of dealing'" is "'a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.'" Well Luck Co., Inc. v. F.C. Gerlach & Co., Inc., 421 F. Supp. 2d 533, 540 (E.D.N.Y. 2005) (quoting Restatement (Second) of Contracts § 223(1) (1981)). "'Unless otherwise agreed, a course of dealing between the parties gives meaning to or supplements or qualifies their agreement.'" Id. (quoting Restatement (Second) of Contracts § 223(2)). "Thus, notwithstanding a contract provision that any extra work must be supported by a written authorization, when a party knowingly receives and accepts the benefits of extra work outside the scope of a construction contract orally directed by himself and his agents, such conduct constitutes a waiver of the requirement." S. Leo Harmonay, Inc. v. Binks Mfg. Co., 597 F. Supp. 1014, 1032 (S.D.N.Y. 1984) (citations omitted).

Courts in this Circuit and elsewhere have determined that summary judgment is inappropriate where the parties dispute a regular course of dealing. See, e.g., New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 31 (2d Cir. 1997) ("An inference of the parties' common knowledge or understanding that is based upon a prior course of dealings is [a] question of fact.") (citation omitted); Capitol Converting Equip., Inc. v. LEP Transp., Inc., 965 F.2d 391, 395 (7th Cir. 1992) ("Whether a course

of dealing exists between parties to a transaction is a question of fact.").  In <u>Lewis Tree Service v. Lucent Technologies</u>, for example, the United States District Court for the Southern District of New York denied a motion for summary judgment, in part, because one party disputed whether the parties had engaged in a regular course of dealings, "including what the precise nature of the interaction between the parties was" and "the level and frequency of those interactions."  239 F. Supp. 2d 322, 331-32 (S.D.N.Y. 2002).

Here, the Court finds that there are issues of fact as to whether a course of dealing existed between the parties. Johnson asserts that "Dart made several payments to [Johnson] for change order work without requiring adherence to the notice provisions or change order requirements . . . ."  (Def.'s Opp. Br. at 6.)  In support of this factual assertion, Johnson offers the affidavit and deposition of Wood G. Noel, Johnson's Project Manager for the Subcontract.  Mr. Noel states that "[t]he requirements that Dart seeks to impose on this motion were not imposed on the [P]roject."  (Noel Aff., Docket Entry 30-2, ¶ 11; <u>see also</u> Karol Aff. Ex. 7,[11] 32:25-33:10; 34:9-19.)  On that basis, the jury must examine whether the parties engaged in a regular course of dealings, "including what the precise nature of the interaction

---

[11] Karol Affidavit Exhibit 7 is the deposition transcript of Mr. Noel and can be found at Docket Entry 25-3 at 75-104.

between the parties was" and "the level and frequency of those interactions." Lewis Tree Serv., 239 F. Supp. 2d at 332. Thus, Dart's motion for summary judgment is DENIED as to Johnson's extra work claim.

B. Unjust Enrichment

Next, Dart argues that Johnson's unjust enrichment claim is barred by the existence of the Subcontract. (Pl.'s Br. at 7-8.) The Court agrees.

To establish unjust enrichment in New York, a plaintiff must prove "'(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006) (quoting Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000)). As a quasi-contract remedy, unjust enrichment is "an obligation the law creates in the absence of any agreement." Id. at 586-87 (internal quotation marks and citation omitted) (emphasis in original). Generally, a party cannot maintain an unjust enrichment claim when a valid and enforceable contract governs the dispute at issue. See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193, 521 N.Y.S.2d 653 (1987). True enough, a party may only proceed under "both breach of contract and quasi-contract theories where there is a bona fide dispute as to the existence of a contract." Curtis Props. Corp.

v. Greif Cos., 236 A.D.2d 237, 239, 653 N.Y.S.2d 569, 571 (1st Dep't 1997); see Nakamura v. Fujii, 253 A.D.2d 387, 390, 677 N.Y.S.2d 113, 116 (1st Dep't 1998).

Here, there is no bona fide dispute: the Subcontract governed the parties' relationship, detailed the scope of the ATCS work, and set forth the applicable terms and conditions. Surprisingly, Johnson's position is that "Dart has provided no admissible evidence to support its contention that [Johnson] executed or otherwise agreed to assume the terms and conditions of the York/Dart Subcontract." (Def.'s Opp. Br. at 14.) But elsewhere Johnson admits that, by acquiring York, it was "responsible to perform all the work in the York/Dart Subcontract." (See Def.'s Reply to Pl.'s 56.1 Stmt., Docket Entry 24, ¶ 3 at 17.) As a result, there is no legitimate factual dispute about whether the Subcontract controlled the parties' relationship. Thus, Dart's motion for summary judgment is GRANTED as to Johnson's unjust enrichment claim.

C.   Trust Fund Diversion

Dart also seeks summary judgment on Johnson's trust fund diversion claim under Article 3-A of the New York Lien Law. In its amended answer, Johnson only alleges that Dart "may have diverted trust funds." (Am. Answer & Countercls. ¶ 22 (emphasis added).) The record, however, is bereft of any evidence supporting

that allegation, and thus, the claim must be dismissed.  See Capitol Awning Co. v. Local 137 Sheet Metal Workers Int'l Ass'n, 698 F. Supp. 2d 308, 321 (E.D.N.Y. Mar. 18, 2010) (explaining that the non-moving party cannot "rest solely on the pleadings").

The purpose of the Lien Law is to "protect parties who performed the construction work."  Land-Site Contr. v. Marine Midland Bank, 177 A.D.2d 413, 414, 576 N.Y.S.2d 255, 257 (1st Dep't 1991).  Under that rationale, Article 3-A creates a statutory trust "out of certain construction payments or funds to assure payment of subcontractors," among others.  Caristo Constr. Corp. v. Diners Fin. Corp., 21 N.Y.2d 507, 512, 236 N.E.2d 461, 463, 289 N.Y.S.2d 175 (1968).  In other words, "[t]he Lien law declares that funds received by a general contractor in performance of public improvement contracts, and the right to receive those funds, are held by the contractor in trust for the benefit of his subcontractors and suppliers."  S & D Maint. Co. v. Goldin, 844 F.2d 962, 969 (2d Cir. 1988).  And as soon as a statutory trust is created, "its funds may not be diverted for non-trust purposes." Matter of RLI Ins. Co. v. N.Y. State Dep't of Labor, 97 N.Y.2d 256, 263, 766 N.E.2d 934, 938, 740 N.Y.S.2d 272 (2002); see also N.Y. Lien Law § 72 (McKinney 2015) (prohibiting trust fund diversion).

Although Johnson is a trust beneficiary, Dart correctly points out that Johnson failed to bring the claim in a

representative capacity, as required by statute. See N.Y. LIEN LAW § 77(1) (McKinney 2015) ("[A] trust arising under this article may be enforced by the holder of any trust claim . . . in a representative action brought for the benefit of all beneficiaries of the trust."). But numerous courts have allowed parties to cure any procedural defects through class certification or joinder. See, e.g., Atlas Bldg. Sys., Inc. v. Rende, 236 A.D.2d 494, 496, 653 N.Y.S.2d 694, 696 (2d Dep't 1997) (remitting the matter to the lower court to provide notice to trust beneficiaries and to obtain class certification); U.S. Fid. & Guar. Co. v. Madison Fin. Corp., No. 01-CV-3998, 2002 WL 31731020, at *1–2 (S.D.N.Y. Dec. 4, 2002) (permitting joinder to cure any procedural deficiencies). But even if the Court granted class certification or joined the necessary parties, the claim itself is purely speculative.

Johnson has not provided any evidence, nor advanced any argument, that Dart diverted trust assets. (Pl.'s Br. at 10-11.) In fact, Johnson does not even address this argument in its motion papers. (See generally Def.'s Reply Br.) As such, Dart's motion for summary judgment is GRANTED as to Johnson's trust fund diversion claim.

D.  Claim for Backcharges

Finally, Dart moves for summary judgment on its claim for backcharges. Dart argues that it incurred costs because Johnson failed to fulfill its responsibilities under the

Subcontract.  (Pl.'s Br. at 11.)  According to Johnson, however,

"a simple reading of the backcharge reveals that it is devoid of

any reference to" Johnson or Johnson's change orders with Dart.

(Def.'s Opp. Br. at 16-17 (citing Noel Aff. ¶ 8).)  In response,

Dart submitted the sworn affidavit of Mr. Karol, who points out

that "the City would not explicitly reference Johnson because the

City only has a contract with Dart . . . ."  (Karol Reply Aff.,

Docket Entry 31-1, ¶ 9.)

As an initial matter, the interpretation of a contract

is a question of law, including "the threshold question of whether

the terms of the contract are ambiguous."  Alexander & Alexander

Servs., Inc. v. These Certain Underwriters at Lloyd's, London,

England, 136 F.3d 82, 86 (2d Cir. 1998) (citation omitted).  "Where

the language of the contract is unambiguous, and reasonable persons

could not differ as to its meaning," summary judgment is proper.

See Rothenberg v. Lincoln Farm Camp, Inc., 755 F.2d 1017, 1019 (2d

Cir. 1985) (collecting cases).  Contract language is unambiguous

when it has "'a definite and precise meaning . . . concerning which

there is no reasonable basis for a difference of opinion.'"  Hunt

Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d

Cir. 1989) (quoting Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351,

355, 385 N.E.2d 1280, 1282, 413 N.Y.S.2d 352 (1978)).  By contrast,

an ambiguity exists when the contract language is "capable of more

than one meaning when viewed objectively by a reasonably

intelligent person." JA Apparel Corp. v. Abboud, 568 F.3d 390, 296-97 (2d Cir. 2009).

There is no legitimate factual dispute about whether Johnson is responsible for Dart's backcharges. On April 12, 2014, DSNY issued Change Order No. 3-69 as a backcharge to Dart. (See Karol Aff. Ex. 6, Docket Entry 25-3, at 69.) Mr. Karol states that Change Order No. 3-69 Items 1, 2, 3, 4, 5, 7, 7a, 7b, and 9 were Johnson's responsibility and totaled $321,483. (Karol Reply Aff. ¶ 9.) Simply stated, the scope of the Change Order work deals with the installation of wiring and sensors for AHUs and H&V units (Items 1, 2, and 5), the installation of thermostats (Items 3, 4, and 7), the installation of wiring and sensors for CO/NO2-related items (Items 7a and 7b), and the completion of ATCS training (Item 9). (Karol Aff. Ex. 6 at 73-74.) Under the Subcontract, Johnson was responsible for the ATCS work. The Subcontract unambiguously states that this work includes AHUs and H&V units, thermostats, and CO/NO2-related items. (Subcontract at 15-22.) The Court finds that a reasonably intelligent person viewing the Subcontract could reach the same conclusion. Thus, Dart's motion for summary judgment is GRANTED as to its claim for backcharges.

## CONCLUSION

For the foregoing reasons, Johnson's motion for summary judgment (Docket Entry 26.) is DENIED, and Dart's motion for partial summary judgment (Docket Entry 25.) is GRANTED IN PART and

DENIED IN PART. Dart's motion is specifically GRANTED on the unjust enrichment claim, the trust fund diversion claim, and the claim for backcharges, but otherwise DENIED.


                              SO ORDERED.


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated:      December   15  , 2015
            Central Islip, New York